# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Crim. No. 19-314 (ADM/BRT) |
| Plaintiff, | |
| v. | |
| John Sheldon Pickens, Jr., | **ORDER** |
| Defendant. | |

Thomas Calhoun-Lopez, Esq., United States Attorney's Office, counsel for Plaintiff.

James Scott Robbins, Esq., Kowitz Law, counsel for Defendant Pickens.

Defendant is charged with possession with intent to distribute cocaine on November 1, 2019. (Doc. No. 1, Indictment.) Defendant filed one pretrial discovery motion. (Doc. No. 19.) The Government filed a response (Doc. No. 20), and Defendant filed a reply. (Doc. No. 21.) Because no testimony was noticed, and because convening in person presented health risks considering the COVID-19 pandemic, the parties agreed that a hearing on the motions was unnecessary and that the Court could rule on the papers. The Court allowed for supplemental briefing. The Government filed its supplement brief on March 25, 2020, and Defendant filed his supplemental brief on April 1, 2020. (Doc. Nos. 26, 28.) The Court took the matter under advisement at that time. Based on the file and documents contained herein, along with the memoranda and arguments of counsel, and for the reasons stated below, the Court grants in part and denies in part Defendant's motion.

## DISCUSSION

The Government explains that on October 5, 2019, the St. Paul Police Department obtained warrants to collect data from Defendant's cell phones, including location information, as part of an investigation of a homicide that occurred on September 28, 2019. (Doc. No. 26, Response in Opp'n 1.) Data collected pursuant to the warrants led officers to suspect that Defendant had picked up a quantity of a controlled substance in Chicago on November 1, 2019. (*Id.*) It was based on this information that officers encountered, pursued, and apprehended Defendant later that day. (*Id.* at 3.) Officers then searched Defendant's vehicle (and later searched Defendant's apartment) and uncovered the controlled substances that led to the filing of the Indictment in this case. (*Id.*; *see also* Doc. No. 1, Indictment.)

Before the Court is Defendant's Motion for Brady Material. (Doc. No. 19.) In this discovery motion, Defendant requests the Court to order the Government to "immediately disclose all favorable or exculpatory evidence," including the following:

1. Evidence from a homicide which occurred on 09/28/2019 at the St. Paul Saloon Bar 1045 Hudson Rd, St Paul, MN 55106. Specifically, security camera footage, audio recording, reports from law enforcement, witness statements taken during the investigation, and reports referenced by law enforcement in the search warrant application.

2. All sources and the content of the information law enforcement used to support the search warrant applications.

3. Evidence which detracts from the credibility or probative value of both testimony and other evidence used by the Government.

4. Evidence of misconduct by government witnesses, including false statements, arrests, and convictions.

(Doc. No. 19, Motion for Brady Material 1–2.) Defendant also requests "leave to file motions for suppression, and/or in limine as indicated by the government's production." (*Id.* at 2.)

In his reply, Defendant asserts that the evidence he requests from the homicide is "central to the Defendant's Fourth Amendment protections." (Doc. No. 21, Reply 2.) Without support or explanation, Defendant claims that the "evidence law enforcement used to apply for the initial warrant was insufficient, improper, and misrepresented[,]" and that "[t]he results of this initial warrant produced poisoned fruit which made all subsequent warrants insufficient requiring suppression." (*Id.*) He claims that "[t]his allowed law enforcement to track and pursue the Defendant unlawfully in violation of Fourth Amendment protections." (*Id.*)

It appears that Defendant, through this discovery motion, is seeking information from the homicide investigation to challenge the warrants pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). Under *Franks v. Delaware*, a defendant "may request a hearing to challenge a search warrant on the ground that the supporting affidavit contains factual misrepresentations or omissions relevant to the probable cause determination." *United States v. Arnold*, 725 F.3d 896, 898 (8th Cir. 2013).[1] Defendant, however, has not

---

[1] The Court may grant a *Franks* hearing only if the defendant makes a substantial preliminary showing that the affiant (1) "'knowingly and intentionally' made false statements or made them in 'reckless disregard for the truth' and (2) if the false information is excised (or the omitted information is included), the affidavit no longer establishes probable cause." *United States v. Arnold*, 725 F.3d 896, 898 (8th Cir. 2013) (citation omitted). The requirement of a substantial preliminary showing "is not lightly met." *United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998) (citation omitted).

filed a motion to suppress based on alleged Fourth Amendment violations, nor has Defendant filed a motion requesting a *Franks* hearing. Defendant has not requested a four-corners review of the warrants either. Therefore, the question of whether there has been a Fourth Amendment violation with respect to the warrants is not an issue before the Court.[2] Instead, what is before the Court is a discovery request, whereby Defendant claims the discovery is needed so that he can evaluate the violation.

The Government states that it will fully comply with its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and Federal Rule of Criminal Procedure 16, but it objects to Defendant's motion to the extent that it goes beyond the requirements of *Brady*, *Giglio*, and their progeny, and is outside the ambit of Rule 16. Specifically, the Government opposes Defendant's request for evidence from the September 28, 2019 homicide, stating that the homicide is unrelated to the Indictment in his case, which charges Defendant with possession with intent to distribute cocaine. The Government also states that the homicide investigation is ongoing and argues that disclosure of information from that investigation "would compromise the investigation and could frustrate its advancement." (Doc. No. 20, Response 2.) The Government represents that it has already disclosed police reports, photographs, and

---

[2] The Court notes that any pretrial motion for suppression or motion to request a *Franks* hearing were to be filed by February 20, 2020, in accordance with the scheduling order in this case. (*See* Doc. No. 16 ("All motions in the above-entitled case must be filed and served consistent with Federal Rules of Criminal Procedure 12(b) and 47 on or before **February 20, 2020**.").) If, however, pursuant to this Order, the Government makes an additional production of *Brady* material relating to the warrants from the homicide investigation, Defendant may seek leave to file a request for a *Franks* hearing or a motion to suppress if he has support for such motions.

video relating to the November 1, 2019 arrest, and that it has also disclosed the search warrants from the investigation. (Response in Opp'n 3.)

There is no general constitutional right to discovery in a criminal case. *United States v. Johnson*, 228 F.3d 920, 924 (8th Cir. 2000). Instead, "[i]n most circumstances . . . a defendant must point to a statute, rule of criminal procedure, or other entitlement to obtain discovery from the government." *Id.* For example, Rule 16(a)(1)(E) requires disclosure upon request of all material information in the government's possession. In addition, pursuant to Supreme Court caselaw, the government must produce "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). This obligation also includes evidence that can be used to impeach a government witness. *Giglio v. United States*, 405 U.S. 150, 154–55 (1972). A prosecutor "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).

Here, the Government states that it has met its obligations under Rule 16, as well as pursuant to *Brady*, *Giglio*, and their progeny. It appears, however, that the Government is arguing that materials from the ongoing homicide investigation fall outside of this authority because Defendant is not charged federally with the homicide. (*See* Response in Opp'n 3–4.) The Government asserts that the homicide investigation "has no bearing on" Defendant's charge in the underlying Indictment in this case. (*Id.* at 3.) In addition, the Government argues that not only has Defendant not met his burden to merit a *Franks*

5

hearing, but that he should not be allowed discovery for the purpose of pursuing a *Franks* hearing. (*Id.* at 5–6.)

Generally, the fact that a defendant wishes to seek a *Franks* hearing "does not entitle him or her to additional discovery before the *Franks* hearing." *United States v. Randle*, No. 19cr50 (ADM/TNL), Doc. No. 70 (D. Minn. Sept. 23, 2019). However, as the Court noted in *Randle*, "[t]o the extent the materials Defendant seeks are discoverable under a separate statute, rule or case, such as *Brady* or *Giglio*, the Court expects those materials to be disclosed to Defendant." *Id.* at 4, n.1. The fact that Defendant is not federally charged with the homicide does not necessarily mean that materials from that investigation are off-limits as the Government suggests.[3] If there has been a joint

---

[3] *See United States v. Giron*, No. 1:17CR-0031, 2017 WL 6459560, at *9, n.9 (D.N.D. Dec. 18, 2017), stating:

> For examples of cases discussing the federal government's obligations (or lack of them) under Rule 16, the Jencks Act, and/or *Brady*/*Giglio* for material in the hands of state or local law enforcement, *see, e.g.*, *United States v. Naranjo*, 634 F.3d 1198, 1211–13 (11th Cir. 2011) (stating that the Jencks Act and *Brady* applied only to information possessed by the federal government where the federal and state investigations were separate and distinguishing cases where there was a pooling by federal and state authorities of their investigative resources and the state investigators functioned as agents of the federal government);*United States v. Moeckly*, 769 F.2d 453, 463–64 (8th Cir. 1985) (noting cases holding that the Jencks Act does not apply to statements taken by state officials when there is no joint investigation or cooperation with federal authorities and concluding there was no Jencks Act violation); *United States v. Escobar*, 674 F.2d 469, 478–79 (5th Cir. 1982) (statements in the hands of local police are not statements in the possession of the federal government for purposes of the Jencks Act and no obligation to search the files of a state police office for exculpatory evidence); *United States v. Heath*, 580 F.2d 1011, 1018–19 & n.1 (10th Cir. 1978) (concluding that the failure to turn over a witness statement generated by local law enforcement violated the Jencks Act,

investigation or cooperation between federal and state authorities with respect to this case and the homicide case, then the Jencks Act[4] and *Brady* apply to the shared information possessed by the federal government and it must be produced in accordance with the applicable statutes and caselaw.

## ORDER

For the reasons stated above, the Court hereby orders the following:

1. Defendant's Motion for Brady Material (Doc. No. 19) is **GRANTED IN PART** and **DENIED IN PART**. To the extent the Defendant requests the Government to disclose *Brady* and *Giglio* evidence and evidence that conforms to the scope of Rule 16, the motion is granted. Within **10 days** of the date of this Order, the Government must disclose all *Brady* and *Giglio* information in its possession or of which it has become aware as of the date of this Order and must promptly supplement its disclosure upon

---

given the close cooperation in that case between the federal prosecutors and state and local law enforcement); *United States v. Ferguson*, 478 F. Supp. 2d 220, 238–39 (D. Conn. 2007) (discussing the possible situations in which a joint investigation conducted by federal and state or local agencies might trigger the federal prosecutor's obligations to learn of any *Brady*/*Giglio* information in the hands of the cooperating state or local agencies); *cf. United States. v. W.R. Grace*, 401 F. Supp. 2d 1069, 1082–83 (D. Mont. 2005) (no obligation in that case under Rule 16 to produce information within the possession of state agencies except as it may come into the possession of the prosecution).

[4] Because Defendant requests witness statements among the information that he seeks, the Jencks Act must be considered. The Jencks Act, 18 U.S.C. § 3500, provides that, after a government witness has testified on direct examination, the government must produce all material in its possession that is a statement made by the witness relating to the subject matter of the witness's testimony.

7

receipt of any additional *Brady* and *Giglio* information not previously disclosed. This includes *Brady* and *Giglio* information possessed by the federal government that has been shared between federal and state authorities through their joint investigation or cooperation relating to this case or the homicide investigation. Any *Brady* and *Giglio* information disclosed relating to the on-going homicide investigation can be made in redacted form, redacting names or other information that might compromise the homicide investigation. If there is such *Brady* and *Giglio* information, and, pursuant to this Order, the Government makes an additional production of such *Brady* and *Giglio* material relating to the warrants that resulted from the homicide investigation, Defendant may seek leave to file a request for a *Franks* hearing or a motion to suppress if he has support for such motions. The motion is **DENIED** to the extent that the Jencks Act protects disclosure, and identification of witnesses shall be done in accordance with the District Court's pretrial order on disclosure of witness and exhibit lists.

2. The voir dire, jury instructions, and trial related motions due date, along with the trial date, are to be determined by U.S. District Judge Ann D. Montgomery.

Date:  April 17, 2020

                                                     *s/ Becky R. Thorson*
                                                     BECKY R. THORSON
                                                     United States Magistrate Judge