**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| United States of America, | Crim. No. 19-314 (ADM/BRT) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| John Sheldon Pickens, Jr., | |
| Defendant. | |

Thomas Calhoun-Lopez, Esq., Assistant United States Attorney, counsel for Plaintiff.

James Scott Robbins, Esq., Kowitz Law, counsel for Defendant Pickens, Jr.

BECKY R. THORSON, United States Magistrate Judge.

On December 5, 2019, Defendant John Sheldon Pickens, Jr., was indicted on one count of possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A). (Doc. No. 1.) This matter is before the Court on Defendant's Motion to Suppress the Fruits of an Illegal Search (Doc. No. 37), specifically seeking suppression of evidence resulting from four warrants – one to track the phone number ending in 5588, one to track the phone number ending in 8379, one to search an address in West St. Paul, and one to search an iPhone S and Samsung Galaxy S9. (Doc. No. 50, Def.'s Mem. in Supp. of Mots. ("Def.'s Mem.") 3; Doc. No. 48, 8/24/20 Hr'g Ex. List, Exs. 1–4.) Defendant also requests an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). (Doc. No. 49, Def.'s Mot. for Hearing Pursuant to *Franks v. Delaware* 1.) The matter was referred to the undersigned for a Report and

Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1. For the reasons set forth below, this Court recommends that Defendant's request for a *Franks* hearing be denied, and Defendant's underlying Motion to Suppress also be denied.

## BACKGROUND

On October 5, 2019, as part of a murder investigation, St. Paul police officers obtained two warrants to collect location data from phone numbers affiliated with Defendant Pickens (the numbers ending in 5588 and 8379). (Hr'g Exs., 1, 2.) Sgt. Salim Omari's affidavit in support of these warrants identified Pickens as being near the scene of the murder and suspected of having knowledge about the murder, the victim, and the key suspect. Sgt. Omari also stated in the affidavit that there was an outstanding misdemeanor arrest warrant from Ramsey County for Pickens. (Hr'g Ex. 1 at 6; Hr'g Ex. 2 at 6.) The warrants requested permission to track Picken's phone "so he can be located and arrested for his warrant and be interviewed in relation to the murder . . ." (Hr'g Ex. 1 at 7; Hr'g Ex. 2 at 7.)

Approximately one month later, St. Paul police officers obtained two additional warrants on November 1, 2019. (Hr'g Exs., 3, 4.) One of the warrants was to search the contents of Pickens's iPhone. Officer Bravo provided an affidavit in support of this warrant, wherein he described Pickens's suspected location and activity during the homicide, and also described information that linked Pickens to suspected drug trafficking activity, including a picture of Pickens with what appeared to be "bricks" of narcotics obtained from a cell phone searched and seized pursuant to a search warrant obtained upon Pickens's arrest on a warrant. (Hr'g Ex. 3 at 2–3.) Officer Bravo also

2

described the pursuit of Pickens in a vehicle after he fled police when he was returning to Minnesota from a quick trip to Chicago, and after Pickens was arrested, a search of the vehicle "recovered 6 'bricks' of narcotics with an estimated weight of 12 pounds." (*Id.*) The application for the search of Pickens's phones sought "to have the contacts, call logs, text/SMS/MMS/iMessages, pictures, videos, accounts, emails, location history, and web search history recovered from the devices to be searched and reviewed for further evidence of drug trafficking and sales." (*Id.* at 3.)

The second warrant was to search Pickens's apartment in West St. Paul. (Hr'g Ex. 4.) Sgt. Schwab provided an affidavit in support of this warrant, wherein he described Pickens's location and suspected activity during the homicide (Hr'g Ex. 4 at 2–5), and noted that from the cell phones searched and seized pursuant to a search warrant obtained when Pickens was arrested on the misdemeanor warrant, officers found Pickens "posing in front of three brick size quantities of suspected controlled narcotics that are on a scale." (*Id.* at 6.) Sgt. Schwab also described that when law enforcement attempted to stop his vehicle for suspected drug trafficking activity, Pickens fled, ultimately resulting in troopers taking him into custody. (*Id.* at 7.) Twelve pounds of cocaine were located in the vehicle Pickens was driving. (*Id.*) The application for the search of Pickens's apartment sought permission to search for evidence from the homicide and for evidence of drug trafficking. (*Id.* at 1–2.)

These two search warrants were issued and executed on November 1, 2019. Several items were found and seized at Defendant's residence, including over $58,000 in U.S. currency, three firearms, and ammunition. (Hrg. Ex. 4, Receipt, Inventory and

Return.) On December 5, 2019, Defendant Pickens was indicted for possession with intent to distribute cocaine. (Doc. No. 1.)

On July 22, 2020, Defendant moved to suppress the evidence seized as a result of the four search warrants identified above, stating that he requests to "suppress the fruits that law enforcement attained when they exceed the scope of a warrant." (Doc. No. 37.) The undersigned held a hearing on Defendant's motion on August 24, 2020, and received the search warrants and affidavits that are at issue as Hearing Exhibits 1–4. (*See* Doc. Nos. 47, 48.) At the hearing, Defendant also requested an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). The Court explained to Defendant that he did not have a motion requesting a *Franks* hearing on file. The Court, however, did allow for post-hearing briefing. (Doc. No. 47.) On September 8, 2020, Defendant filed a Motion for Hearing Pursuant to *Franks v. Delaware*, and a brief in support of both his *Franks* request and his motion to suppress. (Doc. Nos. 49, 50.) The Government filed a responsive brief on September 21, 2020. (Doc. No. 51.)

## DISCUSSION

The issues before the Court are whether Defendant has met his showing for a *Franks* hearing and, if no *Franks* hearing will be had, whether the search warrant affidavits at issue provided sufficient probable cause.

### I.   *Franks* Hearing

The legality of a search may be subject to challenge even if conducted pursuant to a warrant. A defendant may challenge the veracity of the affidavit offered in support of probable cause. *See United States v. Sundby*, 186 F.3d 873, 876 (8th Cir. 1999). "To

warrant a hearing on the affidavit's veracity, the defendant must make 'a substantial showing that the affidavit contains intentional or reckless false statements and [that] the affidavit, [if] purged of its falsities, would not be sufficient to support a finding of probable cause.'" *Id.* (alterations in original) (quoting *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997); citing *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)). The Eighth Circuit has "applied [the] rationale [of *Franks*] to cover material that has been deliberately or recklessly omitted from a search-warrant affidavit." *United States v. Jacobs*, 986 F.2d 1231, 1234 (8th Cir. 1993); *see also United States v. Wilson*, 324 F. App'x 546, 547 (8th Cir. 2009) (applying the two-part test for omissions). When challenging a warrant based on an omission, the defendant must show "that the police omitted facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading" and that "the affidavit[,] if supplemented by the omitted information[,] would not have been sufficient to support a finding of probable cause." *Jacobs*, 986 F.2d at 1234 (quoting *United States v. Reivich*, 793 F.2d 957, 961 (8th Cir. 1986)).

The substantial showing required for a *Franks* hearing "is not easily made." *United States v. Engler*, 521 F.3d 965, 969 (8th Cir. 2008); *see also United States v. Arnold*, 725 F.3d 896, 898 (8th Cir. 2013) ("The requirement of a substantial preliminary showing is not lightly met . . . ." (quotations omitted)); *United States v. Milton*, 153 F.3d 891, 896 (8th Cir. 1998) ("The 'substantial preliminary showing' requirement needed to obtain a *Franks* hearing is not lightly met."). A defendant must "offer specific allegations along with supporting affidavits or similarly reliable statements." *United States v.*

5

*Gonzalez*, 781 F.3d 422, 430 (8th Cir. 2015). "A showing of negligence or innocent mistake is not enough to establish a *Franks* violation." *United States v. Butler*, 594 F.3d 955, 961 (8th Cir. 2010). "A *Franks* hearing must be denied unless the defendant makes a strong initial showing of deliberate falsehood or reckless disregard of the truth." *United States v. Freeman*, 625 F.3d 1049, 1052 (8th Cir. 2010) (quotations omitted). If a defendant makes the substantial showing necessary to entitle him to a *Franks* hearing, he must then prove his allegations before the Court will suppress evidence. *Jacobs*, 986 F.2d at 1234. If the defendant establishes by a preponderance of the evidence "the allegation of perjury or reckless disregard" and, "with the affidavit's false materials set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.* (quoting *Franks*, 438 U.S. at 155–56).

In this matter, Defendant first seeks a *Franks* hearing with regard to the two tracking warrants. Defendant points to Sgt. Omari's statement in the warrant affidavits that "the information in this tracking warrant will *assist in the ongoing investigation* to the whereabouts of PICKENS, so he can be *located* and *arrested* for his warrant and be *interviewed* in relation to the murder of BROWN." (Doc. No. 50, Def.'s Mem. in Supp. of Mots. ("Def.'s Mem.") 3 (emphasis added by Defendant Pickens).) It appears that Defendant is arguing that this statement by Sgt. Omari as to the purpose for the warrant was false or misleading because after Pickens was arrested and interviewed on October 7, 2019, law enforcement continued to track Pickens pursuant to this warrant. Defendant

6

also seeks a *Franks* hearing with regard to the two other warrants—for Defendant's iPhone and for Defendant's apartment—because the affidavits reference a photo extracted from Pickens's cell phone before the warrant for the iPhone was signed on November 1, 2019; therefore, Defendant asserts, the photo had to be illegally attained. (*Id.* at 4–5.)

As a preliminary matter, Defendant has not presented evidence in the form of an affidavit or otherwise to corroborate his assertions that the statements were false or misleading. "A mere allegation standing alone, without an offer of proof in the form of a sworn affidavit of a witness or some other reliable corroboration, is insufficient to make the difficult preliminary showing." *United States v. El-Alamin*, 574 F.3d 915, 925 (8th Cir. 2009) (quoting *United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998); citing *Franks*, 438 U.S. at 171); *see also Gonzalez*, 781 F.3d at 430 (stating that a defendant must "offer specific allegations along with supporting affidavits or similarly reliable statements").

In addition, *Franks* only "protects against omissions that are *designed to mislead*, or that are made in *reckless disregard of whether they would mislead*" the reviewing judge. *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990) (emphasis in original) (citing *Reivich*, 793 F.2d at 961). There is nothing in the record that indicates that the information relayed in any of the affidavits at issue were untrue or misleading.

As to the tracking warrants, Defendant has provided nothing showing the statement that "the information in this tracking warrant will assist in the ongoing investigation to the whereabouts of PICKENS, so he can be located and arrested for his

7

warrant and be interviewed in relation to the murder of BROWN" was not a truthful statement or was false or misleading at the time that it was made. *See Gonzalez*, 781 F.3d at 430 (stating that a defendant must "offer specific allegations along with supporting affidavits or similarly reliable statements"); *El-Alamin*, 574 F.3d at 925 (stating it is insufficient to make a *Franks* hearing showing without an "offer of proof in the form of a sworn affidavit of a witness or some other reliable corroboration" (quotations omitted)). Therefore, Defendant has not met his burden to warrant a *Franks* hearing on this ground. Furthermore, even if the Court were to find that a deliberate lie or reckless disregard for the truth occurred by Sgt. Omari making this statement about the purpose of the warrant, a hearing is still not required because a defendant must also establish that a "corrected" or "supplemented warrant," (*i.e.*, the affidavit with the purportedly critical omitted information supplied and the purported falsehoods removed), would not have supported the existence of probable cause. *Reivich*, 793 F.2d at 962. Here, because even a "corrected affidavit" that removes the challenged statement would still have supported the existence of probable cause, Defendant has failed to make the requisite preliminary showing to warrant a *Franks* hearing.

Defendant has not identified a false or misleading statement in the other two warrants either. Defendant does not claim that the fact that the officers extracted a photo from Defendant's iPhone was false, nor does Defendant claim that the photo does not depict what the officers describe. Instead, Defendant asserts that there must have been an illegal search of the iPhone prior to the search warrant's issuance. First, this does not implicate *Franks*, because Defendant is not arguing that the statements in the search

8

warrant applications were false or misleading. Moreover, Defendant ignores the evidence that there was an initial search of the iPhone undertaken as part of the homicide investigation when Defendant was arrested on October 7, 2019, which explains why the photo extraction would have been done prior to the search warrant application at issue (seeking separate authorization to search the phone again for evidence of drug trafficking). (*See* Hr'g Ex. 3 at 2 ("PICKENS was arrested on an outstanding warrant on October 7, 2019 and a cell phone warrant was written to get the information from his cell phones. A review of the information from the phones discovered a picture in a chat thread of PICKENS with what appeared to be 'bricks' of narcotics."); Hr'g Ex. 4 at 6 ("Once PICKENS was taken into custody three cell phones were located on or around his person. A search warrant was obtained for a forensic exam of PICKENS phones . . . . Also in the extracted information from PICKENS cell phone was a picture of him posing in front of three brick size quantities of suspected narcotics that are on a scale.").) Defendant has provided no evidence that either Sgt. Schwab or Officer Bravo made any misleading statements in their affidavits.

   In addition, although Defendant has not identified what information should have been included in these warrant affidavits and was not, recklessness may only be properly inferred from an omission where the omitted material was "clearly critical to the finding of probable cause" or amounted to "flagrant police actions." *Reivich*, 793 F.2d at 961 (quotations omitted); *see also Gonzalez*, 781 F.3d at 431 ("[R]eckless disregard for the truth may be inferred from the fact that . . . information was omitted," but "this inference is valid only when the defendant shows that the omitted material would be clearly critical

9

to the finding of probable cause." (quotations omitted)). And, even assuming information was intentionally or recklessly omitted from the search warrant affidavits, "[s]uch a finding alone is legally insufficient to justify a *Franks* hearing absent a determination that the intentionally or recklessly omitted information may have . . . otherwise made a probable cause finding unsupportable." *United States v. Scott*, 610 F.3d 1009, 1013 (8th Cir. 2010) (quoting *United States v. Williams*, 477 F.3d 554, 558 (8th Cir. 2007)). Here, information on any further purpose of the tracking warrants, or more information about the collection of data from Defendant's iPhone pursuant to an earlier search warrant, was neither critical to the finding of probable cause nor would have changed that finding, and therefore, their omission was not reckless.

Based on the above, this Court concludes that Defendant has failed to make a substantial preliminary showing that any of the officers included false or reckless statements, or deliberately or recklessly omitted information, in their affidavits. Therefore, this Court recommends that Defendant's motion for a *Franks* hearing be denied.

**II.   Probable Cause**

Since this Court concludes that Defendant has not met the substantial showing needed for a *Franks* hearing, this Court turns next to the only issue that remains from Defendant's underlying motion to suppress – whether the four search warrants at issue were issued without a sufficient showing of probable cause. (*See* Doc. No. 50 at 8 (arguing that "[t]he conclusory allegations of the search warrant applications, and the

lack of specific factual detail concerning the phones, render the search warrant affidavits insufficient to establish probable cause").

The Fourth Amendment requires probable cause to be shown before a search warrant is authorized. U.S. Const. amend. IV; *Williams*, 477 F.3d at 557. In determining whether probable cause exists, a detached and neutral judge must make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see also Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998) ("The standard of probable cause for the issuing judge is whether, given the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." (quotations omitted)). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232. Courts should not review search warrants in a hyper-technical fashion. *United States v. Caswell*, 436 F.3d 894, 897 (8th Cir. 2006).

"When . . . the issuing court relies solely on an affidavit to determine whether probable cause exi[sts], only the information found within the four corners of the affidavit may be considered." *United States v. Wells*, 347 F.3d 280, 286 (8th Cir. 2003) (quotations omitted). In reviewing the decision of the issuing court, this Court must ensure that the court "'had a substantial basis for . . . conclud[ing] that probable cause exists.'" *United States v. Oropesa*, 316 F.3d 762, 766 (8th Cir. 2003) (quoting *Gates*, 462 U.S. at 238–39). Because reasonable minds may differ on whether a particular search-

warrant affidavit establishes probable cause, the issuing court's determination is accorded great deference. *United States v. Wajda*, 810 F.2d 754, 760 (8th Cir. 1987) (citing *United States v. Leon*, 468 U.S. 897, 914 (1984)).

First, this Court concludes that the supporting affidavits for the two cell phone tracker warrants (Hr'g Exs. 1, 2), do establish probable cause and the warrants were not overly broad as Defendant suggests. In Minnesota, tracking warrants for location information must include:

> (1) the identity of the government entity's peace office making the application, and the officer authorizing the application; and
>
> (2) a full and complete statement of the facts and circumstances relied on by the applicant to justify the applicant's belief that a warrant should be issued, including (i) details as to the particular offense that has been, is being, or is about to be committed, and (ii) the identity of the person, if known, committing the offense whose location information is to be obtained.

Minn. Stat. § 626A.42, subd. 2(a). The warrant "must be issued only if the government entity shows that there is probable cause the person who possesses an electronic device is committing, has committed, or is about to commit a crime." Minn. Stat. § 626A.42, subd. 2(a). Sgt. Omari's affidavit met all these requirements. The facts provided in the affidavit indicating that Defendant Pickens was at the scene of a murder, was observed calling someone appearing to advise them of the victim's presence, and was a known associate of both a person who was previously murdered and the person who was the main suspect in the killing of the present victim, as well as information provided establishing the two active cell phone numbers for Pickens, established probable cause to believe that Pickens was committing, has committed, or is about to commit a crime, and that there was fair

12

probability evidence of the crime (murder) would be found through tracking Pickens's cell phones for location information. (*See* Hr'g Ex. 1 at 3–7; Hr'g Ex. 2 at 3–7.) These warrants were also not overly broad. Because Pickens was suspected of using his cell phone to help effect the murder, and the affidavit explained that a person who officers believed was Pickens was seen on his phone and observing the victim during the time immediately leading up to the murder, collecting data regarding the ownership of the phones and the logs of calls made and received from the phones were reasonable. In addition, the date restrictions on the warrant were not overly broad; there is nothing indicating that the officers knew at the time when they would actually locate Pickens, and cell phone location tracking for up to 60 days is authorized by Minnesota law. Minn. Stat. § 626A.42, subd. 3(a).

This Court also concludes that the supporting affidavit for the warrant to search the iPhone and Samsung Galaxy S9 (Hr'g Ex. 3), establishes probable cause and this warrant was not overly broad. In addition to information about the murder, Officer Bravo states the following in his affidavit:

> PICKENS was arrested on an outstanding warrant on October 7, 2019 and a cell phone warrant was written to get the information from his cell phones. A review of the information from the phones discovered a picture in a chat thread of PICKENS with what appeared to be "bricks" of narcotics.
>
> St. Paul SIU personnel prepared a search warrant to monitor PICKENS cellular device location. On November 1, 2019, officers were monitoring PICKENS cell location when they noticed the cell locations had left the Minnesota Twin Cities area at around 2044 hours on October 31, 2019. At 2059 hours, the cell location put the device travelling Eastbound on 94 into Wisconsin. The cellular device travelled down to the area of Chicago, IL. At about 0245 hours on November 1, 2019, the cellular device was in the

> Chicago area. On November 1, 2019 at about 0329 hours, the cellular device left the Chicago area and began to travel back towards Minnesota.
>
> Due to the picture found in PICKENS chat history, and the length of the trip, it was believed that PICKENS may have travelled to Chicago to buy and transport narcotics. Saint Paul Police, with Minnesota State Patrol decided to attempt to stop the vehicle with the cellular device as it entered into Minnesota.
>
> While updating the location of the cellular device, Saint Paul Officers saw a vehicle that listed to a car rental company pass them. The driver of the vehicle appeared to match PICKENS description. The vehicle was followed until a fully marked Saint Paul squad with uniformed officers stopped the vehicle at Earl and Beech in Saint Paul. The vehicle fled the stop, and Minnesota State Patrol took over the pursuit.
>
> The pursuit ultimately ended on Highway 52 Southbound near the Plato Blvd exit. The driver, identified as PICKENS, was arrested. A search of the vehicle incident to the arrest, recovered 6 "bricks" of narcotics with an estimated weight of 12 pounds. The substance in the packages was field tested and came back positive for cocaine.
>
> PICKENS had a Samsung Galaxy S9 cell phone . . . and an iPhone S . . . in his possession at the time of his arrest. Your affiant is requesting to have the contacts, call logs, text/SMS/MMS/iMessages, pictures, videos, accounts, emails, location history, and web search history recovered from the devices to be searched and reviewed for further evidence of drug trafficking and sales.

(Hr'g Ex. 3 at 2–3.) Based on the facts provided—including the description of the photo previously found on Pickens's phone depicting him with narcotics, the quick round trip to Chicago, that Pickens tried to evade the police upon his return to Minnesota, and the narcotics found in the vehicle he was driving—there was probable cause to believe that further evidence of drug trafficking activity would be found on his cellular phones, and the data sought through the warrant was not overly broad given the circumstances. *See United States v. Woods*, No. 18-CR-0153 (WMW/HB), 2018 WL 7253603, at *6–7 (D.

Minn. Nov. 16, 2018), *report and recommendation adopted*, 2019 WL 337590 (D. Minn. Jan. 28, 2019) (finding similar categories of evidence reasonable given the investigation of drug trafficking and firearms).

The final warrant challenged by the Defendant is the warrant for the search of Pickens's apartment (Hr'g Ex. 4). Defendant makes no argument as to why probable cause[1] is lacking as to this warrant.[2] The only reference to this warrant in Defendant's brief is within his argument for a *Franks* hearing (i.e., that the photo of Defendant depicted with narcotics extracted from his phone must have been illegally obtained because that information was received before the application for the cell-phone warrant, and therefore use of that information in the warrant to search his apartment was a "fatal error"). (Doc. No. 50 at 4–5.) As explained previously, an initial search of the iPhone was undertaken as part of the homicide investigation when Defendant was arrested on October 7, 2019, which explains why the photo extraction was done prior to the iPhone and apartment search warrants at issue. Therefore, including the information about the photo found on Pickens's phone was not a fatal error, but instead was among the facts supporting probable cause for the searches for evidence of drug trafficking. Thus, any fruit-of-the-poisonous tree argument that Defendant may be trying to make with regard to the apartment search warrant fails.

---

[1]   The Government concedes that "in the search of Pickens's apartment, the nexus between the location and drug trafficking is not clearly set forth." (Doc. No. 51 at 6.) As explained further below, considering the information that was provided in the search warrant affidavit, the *Leon* good-faith exception applies.

[2]   Defendant also makes no argument that this warrant was overly broad.

15

Furthermore, with respect to all of the warrants at issue, even if probable cause did not exist, there were facially valid warrants, and therefore the good-faith exception to the exclusionary rule, established in *United States v. Leon*, 468 U.S. 897 (1984), would have to be considered. "Under the good-faith exception, evidence seized pursuant to a search warrant that lacked probable cause is admissible if the executing officer's good-faith reliance on the warrant is objectively reasonable." *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008). "The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization." *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (alteration in original) (quotations omitted). "When assessing the objective [reasonableness] of police officers executing a warrant, [the Court] must look to the totality of the circumstances, including any information known to the officers but not presented to the issuing judge." *Id.* at 431 (alteration in original) (quotations omitted). Here, this Court concludes that the good-faith exception would apply to all four warrants. There is no evidence to suggest that the officers' reliance on the warrants was not in good faith, nor is there evidence that the officers' reliance was not reasonable.[3] For these

---

[3]  Even though the Government states the nexus between the location and drug trafficking was not clearly set forth in the affidavit supporting the apartment search warrant, the officers' reliance on the warrant was reasonable, especially in light of the information provided in the affidavit tying Pickens to both the residence and to drug trafficking activity. (*See* Hr'g Ex. 4 at 7–8); *see United States v. Ross*, 487 F.3d 1120, 1122–23 (8th Cir. 2007) ("Assuming, without deciding, that the affidavit failed to provide a sufficient nexus between Ross's residence and the drug conspiracy at issue, the *Leon* good-faith exception saves the evidence from suppression under the facts of this case.") (citing cases supporting that a magistrate may reasonably infer that evidence is

reasons, this Court concludes that the evidence seized as a result of the execution of the search warrants at issue need not be suppressed.

## RECOMMENDATION

Based on the file, record, and proceedings herein, and for the reasons stated above,

**IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion for Hearing Pursuant to *Franks v. Delaware* (Doc. No. 49) be **DENIED**; and

2. Defendant's Motion to Suppress the Fruits of an Illegal Search (Doc. No. 37) be **DENIED**.

Date: October 21, 2020         *s/ Becky R. Thorson*
                                BECKY R. THORSON
                                United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b), any party may file and serve specific written objections to this Report and Recommendation by **November 4, 2020**. A party may respond to those objections by **November 18, 2020**. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 7 days from the date of its filing. If timely objections are filed, this Report will be considered under advisement from the earlier of: (1) 7 days after the objections are filed; or (2) from the date a timely response is filed.

---

likely to be found where drug dealers live, even though no drug trafficking was observed there).

**Transcript:** Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within **ten days** of receipt of the Report.