UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

   Plaintiff,

 v.

John Sheldon Pickens, Jr.

   Defendant.

**MEMORANDUM OPINION AND ORDER**
Criminal No. 19-314 ADM/BRT

___

Thomas Calhoun-Lopez, Assistant United States Attorney, United States Attorney's Office, Minneapolis, MN, on behalf of Plaintiff.

James S. Robbins, Esq., Kowitz Law, Lindstrom, MN, on behalf of Defendant.

___

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Defendant John Sheldon Pickens, Jr.'s ("Pickens") Objection [Docket No. 54] to Magistrate Judge Becky R. Thorson's October 21, 2020 Report and Recommendation [Docket No. 52] ("R&R"). In the R&R, Judge Thorson recommends denying Pickens' Motion to Suppress the Fruits of an Illegal Search [Docket No. 37] and Motion for Hearing Pursuant to Franks v. Delaware [Docket No. 49]. For the reasons set forth below, Pickens' Objection is overruled and the R&R is adopted.

## II. BACKGROUND[1]

Pickens is charged with one count of possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Indictment [Docket No. 1]. He moves to

___

[1] The factual background of this case is more fully set forth in the R&R and is incorporated by reference.

suppress evidence seized during the execution of four warrants. Two of the warrants were tracking warrants issued on October 5, 2019 to monitor the location of Pickens' cell phones. The other two were search warrants issued on November 1, 2019 to search the contents of Pickens' phones and to physically search an apartment in West St. Paul, Minnesota. Pickens also seeks an evidentiary hearing to examine statements made in support of the four warrants.

### A. Tracking Warrants Issued October 5, 2019

On October 5, 2019, as part of an investigation into a September 28, 2019 homicide, St. Paul Police Sergeant Salim Omari obtained two warrants to track the location of two cell phones belonging to Pickens. See Gov't Exs. 1, 2. In the affidavits supporting the tracking warrants, Sergeant Omari states that video surveillance and witnesses identified Pickens as greeting the victim at a bar shortly before the murder. Gov't Ex. 1 at 5–6; Gov't Ex. 2 at 5–6. Pickens then made a cell phone call and remained on the phone while watching and following the victim through the bar and outside, as though Pickens was advising the person on the phone about the victims' location. Id. The victim was shot outside the bar by a person believed to be an associate of Pickens. Id.

Sergeant Omari further stated that Pickens had an outstanding misdemeanor arrest warrant from Ramsey County. Id. The warrant affidavits requested permission to track Pickens' phones "so he can be located and arrested for his warrant and be interviewed in relation to the murder." Gov't Ex. 1 at 7; Gov't Ex. 2 at 7. On October 7, 2019, two days after the tracking warrants were issued, Pickens was arrested on the misdemeanor warrant and interviewed by law enforcement about the homicide.

### B. Search Warrants Issued November 1, 2019

On November 1, 2019, St. Paul police officers obtained two additional warrants.  See Gov't Ex. 3, 4.  One of the warrants was to search an iPhone S and Samsung Galaxy S9 belonging to Pickens.  Gov't Ex. 3.  In the affidavit supporting this search warrant, St. Paul Police Officer Adam Bravo described Pickens' suspected involvement in the homicide.  Id. at 2.  Officer Bravo stated that Pickens had been arrested on an outstanding warrant on October 7, 2019, and that "a cell phone warrant was written to get the information from his cell phones.  A review of the information from the phones discovered a picture in a chat thread of PICKENS with what appeared to be 'bricks' of narcotics."  Id.

The affidavit also stated that officers were monitoring Pickens' cell phone location when they noticed that the phone left the Twin Cities the night of October 31, 2019, arrived in Chicago in the early morning hours of November 1, 2019, stayed less than an hour, and began traveling back toward Minnesota.  Id. at 2.  The November 1, 2019 affidavit stated that law officers attempted to stop the vehicle as it returned to Minnesota, because the brief length of the trip and the picture found on Pickens' phone led them to believe that Pickens may have traveled to Chicago to pick up narcotics.  Id. at 3.  The affidavit further stated that Pickens fled in his vehicle, was eventually stopped and arrested for fleeing, and that 12 pounds of cocaine were recovered from the car.  Id.  The affidavit requested authorization to search the iPhone and Samsung Galaxy cell phones that Pickens had in his possession when he was apprehended.  The requested authorization included a search of the phones' "contacts, call logs, text/SMS/MMS/iMessages, pictures, videos, accounts, emails, location history, and web search history . . . for further evidence of drug trafficking and sales."  Id.

The second search warrant issued on November 1, 2019 was for an apartment in West St. Paul.  See Gov't Ex. 4.  The supporting affidavit, provided by St. Paul Police Sergeant Jeffrey Schwab, outlined Pickens's suspected involvement in the homicide and stated that Pickens was arrested on the misdemeanor warrant on October 7, 2019.  Id. at 6.  The affidavit noted that three cell phones were seized from Pickens at the time of the October arrest and that a search warrant was obtained for a forensic exam of the phones.  Id.  The affidavit stated that the search of the phones revealed a picture of Pickens "posing in front of three brick size quantities of suspected controlled narcotics that are on a scale."  Id.  The affidavit then described Pickens' quick trip to Chicago, his flight from law enforcement, his apprehension, and law enforcement's discovery of approximately 12 pounds of cocaine in the vehicle Pickens was driving.  Id. at 7.

The affidavit also stated that the tracking location data from Pickens' cell phone shows he regularly spends time at the West St. Paul apartment, that the apartment is believed to be Pickens' primary residence, and that Pickens likely went there after the murder.  Id. at 6–8.  The application requested authorization to search the apartment for evidence from the homicide, as well as evidence of drug trafficking.  Id. at 1.

Law enforcement officers executed the search warrant for the apartment on November 1, 2019, and found over $58,000 in cash, 3 firearms, and ammunition.  Id. at 10 (Receipt, Inventory and Return).  On December 5, 2019, Pickens was indicted for possession with intent to distribute cocaine.  Indictment at 1.

Pickens has moved to suppress the evidence seized as a result of the four warrants, and also moves for an evidentiary hearing pursuant to Franks v. Delaware.  The R&R recommends denying both motions.

## III. DISCUSSION

### A. Standard of Review

In reviewing a magistrate judge's report and recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); see also D. Minn. L.R. 72.2(b). A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

### B. Motion for Franks Hearing

Pickens has moved for a Franks hearing, arguing that the supporting affidavits for each of the four warrants include false statements that were necessary to the finding of probable cause. To be entitled to a Franks hearing, a defendant must make "a substantial preliminary showing" not only that the affidavit contained false information, but that the inaccuracies were the result of "deliberate falsehood or reckless disregard for the truth" and were "necessary to the finding of probable cause." Franks v. Delaware, 438 U.S. 154,155–56, 171 (1978); see also United States v. Mathison, 157 F.3d 541, 547–48 (8th Cir. 1998). "A mere allegation standing alone, without an offer of proof in the form of a sworn affidavit of a witness or some other reliable corroboration, is insufficient to make the difficult preliminary showing." Mathison, 157 F.3d at 548. A Franks hearing is appropriately granted only in "very limited circumstances." United States v. Ozar, 50 F.3d 1440, 1445 (8th Cir.1995).

#### 1. Tracking Warrants

Pickens contends that in the affidavits supporting the two tracking warrants, Sergeant Omari falsely stated that "the information in this tracking warrant will assist in the ongoing

investigation to the whereabouts of PICKENS, so he can be located and arrested for his warrant and be interviewed in relation to the murder." Gov't Ex. 1 at 6–7; Gov't Ex. 2 at 6–7. Pickens argues the statement is false because law enforcement continued to track Pickens after his October 7, 2019 arrest on the misdemeanor warrant.

The R&R found that Pickens had provided nothing to show that the challenged statement was false or misleading at the time Sergeant Omari made the statement. R&R at 7–8. The R&R further found that if the challenged statement were removed, the affidavits would still support probable cause for issuing the tracking warrants. Id. at 8.

Pickens objects, arguing that once Pickens had been located and arrested on October 7, 2019, the purpose of the tracking warrants was accomplished and any additional use of the tracking warrants violated his constitutional rights. This argument does not alter the conclusion in the R&R that Pickens has not shown that the challenged statements in the tracking warrant affidavits were false or misleading at the time they were made, or that they were necessary to the finding of probable cause. The Court agrees with the R&R's conclusion that Pickens has not satisfied the substantial showing required for a Franks hearing with regard to the two tracking warrants.

**2. Search Warrants**

Pickens argues that the affidavits supporting the November 1, 2019 search warrants for Pickens' phones and apartment included false statements because the affidavits reference a picture that was extracted from Pickens' phone before the November 1, 2019 search warrant for the phone had been issued. Pickens contends that the affidavits misrepresented that the picture had been legally obtained. Def.'s Mem. Supp. Mot. [Docket No. 50] at 4–5 (citing Gov't Ex. 3

at 2; Gov't Ex. 4 at 6).

The R&R found that Pickens is not entitled to a Franks hearing on the November 1, 2019 search warrants because he has provided no evidence that Officer Bravo or Sergeant Schwab made any misleading statements in their affidavits. The R&R notes that both affidavits state that the picture from Pickens' phone had been obtained from a previous search warrant that was issued after Pickens' October 7, 2019 arrest. The R&R also notes that Pickens has not supported his allegations with proof in the form of a sworn affidavit or other reliable corroboration

Pickens objects, arguing that the previous search warrant has never been produced and does not exist. Pickens alleges that Officer Bravo and Sergeant Schwab lied in their affidavits when they stated that a previous warrant had been issued. Pickens contends that the picture was unlawfully obtained from his phone without a warrant, and that if the statements about the prior search warrant and the photograph were omitted from the affidavits, probable cause would be lacking. The Government responds that Pickens' argument is baseless speculation and is not supported by evidence. The Government does not state why the previous search warrant for Pickens' phones has not been produced.

The Court agrees with the R&R's conclusion that Pickens has not made the substantial showing necessary to entitle him to a Franks hearing. Pickens has made no offer of proof in the form of affidavits or similarly reliable statements to support his bare allegations. Presumably, the previous search warrant has not ben produced because doing so might compromise the state homicide investigation.

Nevertheless, to assure Pickens that the previous search warrant does exist without risking any compromise to the homicide investigation, the Court will require the Government to

7

produce for in camera review a copy of the search warrant issued to allow viewing the content of Pickens' phone which resulted in the photo mentioned in a subsequent warrant. If a copy of the search warrant is produced on or before December 31, 2019 to the Court, this Order will stand. If the search warrant is not produced the Court will issue further instructions to the parties.

**C. Motion to Suppress**

Pickens moves to suppress the evidence from the four warrants, arguing that "[t]he conclusory allegations of the search warrant applications, and the lack of specific factual detail concerning the phones, render the search warrant affidavits insufficient to establish probable cause." Def.'s Mem. Supp. Mot. at 8. In its probable cause analysis, the R&R found that even if probable cause did not exist for all of the warrants, the four warrants were facially valid and thus fell under the good-faith exception to the exclusionary rule established in United States v. Leon, 468 U.S. 897 (1984). Pickens objects, arguing the good-faith exception does not apply because the tracking warrants were not sufficiently particularized, and because the affidavits supporting the search warrants included knowingly false statements.

"Under the Leon good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." United States v. Grant, 490 F.3d 627, 632 (8th Cir. 2007). There are four circumstances under which the good-faith exception will not apply:

> (1) when the affidavit or testimony in support of the warrant included a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely

8

> unreasonable"; and (4) when the warrant is "so facially deficient" that the executing officer could not reasonably presume the warrant to be valid.

Id. at 632–33 (quoting Leon, 468 U.S. at 923).

Pickens argues the tracking warrants are facially deficient under Minn. Stat. § 626A.42, which requires tracking warrants to include "a full and complete statement of facts and circumstances relied on by the applicant to justify the applicant's belief that a warrant should be issued, including . . . details as to the particular offense that has been, is being, or is about to be committed." Obj. at 5 (citing Minn. Stat. § 626A.42, subd. 2(2)). Pickens contends the tracking warrants "only describe the Defendant is being pursued because of the potential for information and a misdemeanor warrant," and that this is an impermissible use of the warrant.

This argument is waived because Pickens did not include it in his earlier briefing and has raised it for the first time in the Objection. See United States v. Nguyen, No. 09-172, 2010 WL 5146414, at *1 (D. Minn. Dec. 13, 2010) ("There is no indication that [the defendant] raised this issue during the suppression hearing before the Magistrate Judge. The Court concludes that Defendant has waived this issue by raising it, for the first time, in his objection to the Report and Recommendation."). Even if the argument had not been waived, it lacks merit because Sergeant Omari's affidavit includes a detailed statement describing the facts and circumstances of the homicide and Pickens' suspected involvement. See Gov't Exs 1 and 2. The Court agrees with the R&R's conclusion that the tracking warrants are supported by probable cause, and that even if probable cause did not exist the Leon good-faith exception applies.

Pickens also argues the good-faith exception does not apply to the November 1, 2019 search warrants because the affidavits supporting those warrants included a knowingly false

9

statement that a search warrant had previously been obtained to extract the picture from Pickens' phone. As discussed above, there is no evidence that the affidavits supporting the November 1, 2019 search warrants include false statements. The Court thus agrees with the R&R's conclusion that the Leon good-faith exception applies. This ruling will stand unless the Government fails to provide a copy of the previous search warrant to the Court for an in camera review.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant John Sheldon Pickens, Jr.'s Objection [Docket No. 54] to Magistrate Judge Becky R. Thorson's October 21, 2020 Report and Recommendation is **OVERRULED**;

2. The Report and Recommendation [Docket No. 52] is **ADOPTED**;

3. Pickens' Motion to Suppress the Fruits of an Illegal Search [Docket No. 37] is **DENIED**;

4. Pickens' Motion for Hearing Pursuant to Franks v. Delaware [Docket No. 49] is **DENIED;** and

5. On or before **December 31, 2020**, the Government shall provide the Court for in camera review a copy of the first search warrant for content on Pickens' phones to confirm that such a warrant does exist.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT COURT

Dated: December 22, 2020