## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
## Criminal No. 19-314 (ADM)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) GOVERNMENT'S |
| Plaintiff, | ) RESPONSE TO |
| | ) DEFENDANT'S MOTION TO |
| v. | ) VACATE, SET ASIDE, OR |
| | ) CORRECT SENTENCE |
| JOHN SHELDON PICKENS, JR., | ) UNDER 28 U.S.C. § 2255 |
| | ) |
| Defendant. | ) |

John Sheldon Pickens has moved under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. ECF No. 164. His motion asserts four grounds for relief based on his claim that his counsel was ineffective for failing to suppress evidence obtained by searching his car following his arrest. Pickens repeats the arguments from his appeal challenging the validity of warrants used to track him prior to his arrest following a high-speed chase through Saint Paul, Minnesota. The motion should be denied.

## Factual and Procedural Background

### I. Pickens' arrest and trial

On November 1, 2019, police monitoring Pickens' cell phone location apprehended him in Saint Paul, Minnesota.  ECF No. 199 (Final PSR), ¶¶ 7-10. Police had been tracking his phone pursuant to a warrant obtained to investigate his involvement in a homicide. *Id.* at ¶ 7. Pickens initially pulled

1

over when a marked squad car turned its lights on behind him, but accelerated and fled when an unmarked car pulled in front of him. *Id.* at ¶ 8. Pickens drove around a school bus into the yard of a house and back onto the street before leading officers on a chase for four minutes through a residential area and onto a bridge over the Mississippi River. *Id.* at ¶¶ 8-9. Police and state troopers drove their cars into Pickens' car on the bridge, forcing it to stop. *Id.* at ¶ 9.

Police found approximately six kilograms of cocaine in six packages stored under the seats of Pickens' car. ECF No. 119. ¶ 10. In the backseat of the squad car, Pickens was recorded whispering "six mother******* bricks" to himself. *Id.* Police executed a search warrant at Pickens' apartment on November 1, 2019, finding three loaded weapons, magazines, marijuana, and $61,000 in cash. *Id.* at ¶ 11.

Pickens was indicted on December 5, 2019 on one count of possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). ECF No. 1. He pleaded not guilty to the indictment on January 30, 2020. ECF No. 9.

Pickens, through counsel, filed pretrial motions challenging evidence seized as a result of Pickens' stop and arrest. On July 22, 2020, Pickens filed a motion to suppress "the fruits of an illegal search." ECF No. 37. The government opposed, arguing that the search of Pickens' car was justified as an inventory search and under the automobile exception. ECF No. 39, at 1-2.

2

On September 8, 2020, Pickens filed a motion for a *Franks* hearing to examine statements made in the applications for the tracking warrants. ECF No. 49. The Government filed its opposition on September 21, 2020. ECF No. 51.

Pickens' challenged the validity of all the warrants used to track Pickens' location, search his iPhone, and search his apartment. Saint Paul police applied for the first warrants on October 5, 2019, to track the location of Pickens' phones in connection with a homicide. ECF No. 51, Exs. 1 & 2. The warrant applications requested permission to track Pickens' phone "so he can be located and arrested for his warrant and be interviewed in relation to the murder." ECF No. 51, at 2.

After arresting Pickens, Police obtained two additional warrants on November 1, 2019, seeking to search Pickens' iPhone and his apartment in West Saint Paul. *Id.*, Exs. 3 & 4. The affidavit for these warrants referenced Pickens' suspected involvement in the homicide. ECF No. 51, at 2. The affidavits also noted a picture from Pickens' phone that appeared to show "bricks" of narcotics and location data showing Pickens made a short trip back and forth between Chicago and the Twin Cities. *Id.* The affidavits also noted that police tried to stop Pickens when he returned from Chicago, where he fled at high speed before being caught with 12 pounds of cocaine in six packages. *Id.* at 2-3.

On December 22, 2020, the Court adopted the R&R denying Pickens' motion. ECF No. 57. The Court found that Pickens did not show that the warrants included false statements, and that even if they did, independent probable cause for the warrants existed. *Id.* at 5-8. The Court denied Pickens' motion to suppress the search warrants, holding that the good-faith exception applied. *Id.* at 8. The Court based its denial of the motions to suppress on the conclusion that Pickens waived the argument about facial deficiency of the tracking warrants by not raising it in his suppression hearing before the magistrate judge. *Id.* at 9.

Prior to trial, the Court questioned Pickens to confirm that he wanted to proceed to trial rather than plead guilty. ECF No. 159, at 14 *et seq*. The Court confirmed that Pickens' range of outcomes based on the Government's plea offer would be from 77 to 120 months. ECF No. 159, Trial Tr. at 16:19-25. The government informed the Court that it would be seeking 188 to 235 months. *Id.* at 17:8-9. Pickens indicated that he understood and wanted to proceed to trial. *Id.* at 18:18-21. After a three-day trial, Pickens was found guilty on June 24, 2021. ECF No. 90.

Pickens filed a Pro Se Motion for New Counsel on August 4, 2021. ECF No. 91. He argued that there was "irrevocable harm done by his attorney, from numerous pre-tral and trial errors, including "failing to litigate the point over warrants obtained at the start of the case." *Id.* Pickens' attorney filed a

response to the motion indicating his intent to withdraw, stating that there was an "irreparable breakdown in the attorney/client relationship." ECF No. 95. Pickens' attorney withdrew on August 26, 2021. ECF Nos. 98 & 99.

Pickens filed a Motion for a New Trial on August 23, 2021. ECF No. 96. He claimed that he should receive a new trial because of "newly discovered evidence" concerning the validity of the tracking warrants used to apprehend him. *Id.* at 4-10. Pickens asked for an evidentiary hearing and a new trial. *Id.* at 11.

On September 29, 2021, after having new counsel appointed, Pickens filed a letter to the district judge reiterating his challenge to the warrants. ECF No. 108. He claimed that his previous attorney" should have" raised the warrant issue in pretrial motions but "for some reason did not raise and argue the issue." ECF No. 108, at 2. He requested an evidentiary hearing to discuss the warrant issue. *Id.*

Pickens filed a Motion for New Trial through new counsel on November 3, 2021. ECF No. 124. The motion argued that the tracking warrants were invalid, that the government elicited testimony that the warrants were valid, and that the jury was improperly instructed about the warrants. The new motion asserted that trial counsel was ineffective for failing to suppress the evidence obtained as a result of the tracking warrants and allowing the jury to

be instructed that the warrants were valid. *Id.* at 6. The motion was denied on January 3, 2022. ECF No. 131.

At sentencing, Pickens argued that 121 months would be an appropriate sentence. ECF No. 132, at 7. The government sought a sentence within the guidelines range of 151-188 months. ECF No. 126. On February 4, 2022, Pickens was sentenced to 138 months on a downward variance from the Guidelines. ECF No. 139.

## II. Pickens' appeal

Pickens appealed the Court's denial of his motions for acquittal and new trial on February 7, 2022. ECF Nos. 141 & 145. In his brief, he argued again that the evidence used against him at trial should have been suppressed because his Fourth Amendment rights were violated when police continued to track his location based on the October tracking warrants. Appellant's Br. at 8-10. He also repeated his assertions that the government should have corrected an officer's false claims and that the Court's jury instruction regarding the tracking warrants was erroneous. *Id.* at 11-14. Finally, he argued that his counsel was ineffective because he failed to object to evidence obtained from the warrants and failed to object to the jury instruction regarding the tracking warrants' validity. *Id.* at 16-18. The ineffective assistance argument claimed that "failure to keep invalid warrant evidence out at trial was overwhelmingly prejudicial to Defendant." *Id.* at 18.

6

The Court of Appeals affirmed Pickens' conviction on January 25, 2023. *United States v. Pickens*, 58 F.4th 983, 985 (8th Cir. 2023); ECF Nos. 161-62 (Opinion and Judgment). The Court of Appeals held that the district court did not commit plain error when it determined that Pickens had waived his suppression argument based on expiration of the tracking warrants. *Id.* at 987- 89. It also held that even if Pickens had not waived the argument, there was an arguable basis for probable cause to stop Pickens without the tracking warrants because he fled police at high speed. *Id.* at 989-90. It further rejected Pickens' claims of prosecutorial misconduct and erroneous jury instructions. *Id.* at 989-90. Finally, it declined to consider the ineffective assistance claims on the ground that it was not one of the "exceptional cases" where ineffective assistance claims should be considered on appellate review. *Id.* at 990.

## III.   Overview of Pickens' § 2255 motion

Pickens raises four grounds in his motion, all of which are couched as claims for ineffective assistance of counsel in violation of his Sixth Amendment right. In Ground One, Pickens argues that his attorney should have challenged police tracking of the "cell phone GPS data" that led to Pickens' arrest.  ECF No. 164, at 4. In Ground Two, Pickens claims that his attorney should have challenged Pickens' "unlawful seizure" in Saint Paul "when Pickens was obeying all traffic laws and there was no other reason to believe Pickens was

7

committing a crime." ECF No. 164, at 5. In Ground Three, Pickens argues that his attorney should have sought to suppress evidence resulting from the search of his car "without a warrant or probable cause." ECF No. 164, at 7. In Ground Four, Pickens alleges that his counsel was ineffective during plea negotiations when he "misadvised" Pickens of the likelihood that he could succeed in suppressing evidence. ECF No. 164.

All of these claims stem from the Saint Paul Police pursuit and arrest of Pickens on November 1, 2019. *See* ECF No. 164-1, at 1-3. Pickens describes this stop and arrest as an "ambush" in which "a collection of marked and unmarked cars ambushed Pickens in Saint Paul." *Id.* at 1. He claims that "after repeatedly ramming and totaling Pickens' car," the police "warrantlessly searched Pickens' car to see if he was committing any crimes." *Id.* He admits that they found "some cocaine" in the car. *Id.*

Pickens claims that the police induced him to flee through the manner in which they arrested him. In his version of events, on November 1, 2019, he "noticed a marked police car behind [him]" while driving through a residential area of Saint Paul, Minnesota. ECF No. 164-2, ¶ 7. He claims that after he "pulled over to the side of the road in full compliance with the officer's lights," he saw "an unmarked car…racing towards him head on" which caused him to "evade the impending doom of the collision." *Id.* at ¶¶ 7-8. He then claims he

"kept driving purely out of the flight instinct" before he "peaceably surrendered." *Id*. at ¶ 9. Pickens Admits that after he "peaceably surrendered," the police "searched [his] totaled vehicle and found the evidence that gave rise to this case." *Id*. at ¶ 10.

Pickens argues that his attorney's ineffective assistance caused him to waive his challenge to the search of his car. He claims that his attorney "filed a motion to suppress" the evidence but "never made the argument" that "the evidence in this case was the fruits of at least three violations of the Fourth Amendment's prohibition against warrantless searches and seizures." ECF No. 164-2, ¶¶ 13-19. Pickens then claims that his attorney informed him of a government plea offer for "7-9 years." *Id*. at ¶ 20

Pickens acknowledges that he was "offered plea deals twice in these proceedings – once in advance of trial and once on the first day of trial." ECF No. 164-1, at 10. He claims that his counsel "failed to advise Pickens that the suppression issue was waived," but rather advised him "that Pickens could continue to pursue suppression in trial and on appeal." ECF No. 164-1, at 10. Pickens asserts that based on his attorney's advice that he could still challenge the fruits of the search of his car, he rejected the plea deal. ECF No. 164-2, at ¶ 20. He claims that his attorney told him "he would support whatever

[decision] Pickens made." *Id.* Pickens claims that he would not have gone to trial if that evidence was not suppressed. *Id.* at ¶ 21.

As a result of these alleged violations of his Sixth Amendment rights, Pickens asks the Court to enter a judgment of acquittal. ECF No. 164-1, at 1.

## **LEGAL STANDARDS**

Pickens has the burden to prove, through the grounds in his motion, that his sentence was "imposed in violation of the Constitution or laws of the United States." 22 U.S.C. § 2255(a). This is "an extraordinary remedy" that "will not be allowed to do service for an appeal." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (citation omitted). The Court is "entitled to presume" that Pickens' sentence is lawful. *United States v. Frady*, 456 U.S. 152, 164 (1982).

To establish an ineffective-assistance claim, a defendant must prove two separate prongs, often referred to as the *Strickland* test. Failure to establish either component – deficient performance or prejudice – is fatal to a claim of ineffective assistance. *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011) (citing *Strickland*, 466 U.S. at 697). Courts do not have to evaluate both prongs of the *Strickland* test if defendant fails to establish one. *Deroo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). The standard that a defendant must meet to show ineffective assistance of counsel sets a high bar, e.g., *Love v. United States*, 949 F.3d 406, 410 (8th Cir. 2020), and "is never an easy task."

10

*Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal quotation marks and citation omitted). A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691; *accord Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). For a defendant to show prejudice from an alleged error by counsel, "the likelihood of a different result must be substantial, not just conceivable." *Strickland,* 466 U.S. at 693. And if the evidence of a petitioner's guilt is overwhelming, he cannot possibly establish prejudice, even if counsel's performance was deficient. *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

In addition, Pickens cannot use this § 2255 motion to "relitigate matters decided on direct appeal." *Sun Bear v. United States*, 644 F.3d 700 (8th Cir. 2011) (en banc). ) (citing *Davis v. United States*, 417 U.S. 333, 346-47 (1974)); *see also United States v. Shabazz*, 657 F.2d 189, 190 (8th Cir. 1981) ("Claims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255."). Further, a movant cannot avoid this rule by recasting his claim as one of ineffective assistance of counsel. *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003); *see also Dowdell*

*v. United States*, 859 F.Supp.2d 176, 179 (D. Mass. 2012) ("[i]t is settled law that a petitioner may not revive claims already decided on direct appeal by cloaking them in 'ineffective assistance of counsel' garb in a § 2255 petition"). Any claims in this motion which duplicate Pickens' appellate arguments about prosecutorial misconduct must be denied.

## **ARGUMENT**

Pickens does not meet his burden under *Strickland* to show that he was prejudiced by his counsel's alleged errors. For the first three grounds of his motion, Pickens does not show prejudice because the police had probable cause to arrest him independent of the tracking warrants he challenges. For the fourth ground, Pickens' does not prove that he would have accepted the government's guilty plea if his counsel had advised him differently. Because he does not show prejudice, the Court "need not determine whether [Pickens'] counsel's performance was deficient." *Strickland,* 466 U.S. at 697. Instead, the Court can deny the motion based on Pickens' "insufficient showing" on the "prejudice" prong. *Id.*

## IV.   **Grounds 1-3: Pickens does not show that he was prejudiced by his counsel's failure to argue for suppression of the evidence seized from his car**

Even if Pickens' counsel had argued and won on the issue that the tracking warrants were invalid, Pickens could not have suppressed the

evidence of the six packages of cocaine found in his car.[1] When Pickens fled from police at high speed, the police had an independent basis to stop and search him. This is fatal to Pickens' claims on Grounds One through Three

To show that he suffered prejudice, it's not enough for Pickens to demonstrate that his counsel's choices "had some conceivable effect on the outcome of the proceeding." *Harrington v. Richter,* 562 U.S. 86, 104 (2011). Instead, Pickens must show that his counsel's failure to make Pickens' preferred argument was "so serious as to deprive [Pickens] of a fair trial, a trial whose result is reliable." *Id.* (internal quotations omitted). Pickens' challenges to the validity of the stop and the tracking warrants do not show such an error.

The police had probable cause to stop and search Pickens' car even without the tracking warrants. Even if an initial stop is invalid, resistance and flight can provide independent grounds for arrest. *United States v. Dawdy*, 46 F.3d 1427, 1431 (8th Cir. 1995); *see United States v. Flores-Lagonas*, 993 F.3d

---

[1] The Government does not concede that Pickens would have won on the suppression issue and maintains that the tracking warrants were valid. In adopting the R&R, this Court found that even if the suppression argument had not been waived, it "lacked merit because Sergeant Omari's affidavit [for the October 2019 warrant] includes a detailed statement describing the facts and circumstances of the homicide and Pickens' suspected involvement." ECF No. 57, at 9. The Court also found that "the *Leon* good-faith exception" applied to the November 2019 warrant. ECF No. 57, at 10. In its denial of Pickens' motion for a new trial, the Court found again that "Pickens' flight from the officers provided an independent basis to search his car and find the packages of cocaine." ECF No. 131, at 4.

550, 560 (8th Cir. 2021); *United States v. Sledge*, 460 F.3d 963, 966 (8th Cir. 2006) ("In our circuit, resistance to an illegal arrest can furnish grounds for a second, legitimate arrest."). Here, Pickens admits that he fled a marked squad car with its lights on at high speed, driving while "completely out of [his] senses" and only ending when "[his] car could not drive another inch." ECF No. 164-2, ¶¶ 7-9. That flight took him off the street, around a school bus, and into residential yards. ECF No. 119, ¶¶ 8-11.

After stopping Pickens, Saint Paul Police had ample probable cause to search his car. Aside from his dangerous flight through a residential neighborhood, police already suspected Pickens of involvement in a recent murder. That murder was the basis for the original October 5, 2019 search warrant. *See Pickens,* 58 F.4th at 985. Furthermore, Pickens acknowledges that when police searched his phone while arresting him for an outstanding misdemeanor warrant on October 7, 2019, police found a photograph of Pickens posing with what appeared to be bricks of cocaine. ECF No. 164-2, ¶¶1-3. Based on "the totality of the[se] circumstances," a "reasonable person" could believe there was a "fair probability that contraband or evidence of a crime" would be found in Pickens' car when it finally came to a stop. *See Florida v. Harris,* 568 U.S. 237, 243-44 (2013) (describing probable cause). This basis obviated the need to rely on the tracking warrants for a legitimate stop and search.

Both this Court and the Court of Appeals acknowledged the strength of the government's justification to stop and search Pickens' car. The Court of Appeals noted that "Pickens fled when the police attempted to stop him on November 1, leading them on a hazardous high-speed chase that provided probable cause to arrest Pickens for resisting arrest, failing to stop after a collision, and reckless driving." *Pickens,* 58 F.4th at 988 (citing *United States v. Mayo,* 627 F.3d 709 (8th Cir. 2010)).  Similarly, this Court noted that "[b]y fleeing the officers, Pickens created probable cause to arrest him for [felony reckless driving or fleeing law enforcement] and the evidence discovered in the subsequent search of his car was admissible." ECF No. 131, at 5. (citing *Dawdy*, 46 F.3d at 1431; *Sledge*, 460 F.3d at 966 (agreeing with district court's conclusion that defendant "forfeited any Fourth Amendment protection by resisting and running away from the officers, thus creating probable cause to arrest [defendant]" for violating state law)).

Pickens argues that his flight was induced by police actions and should not be a basis for probable cause, but he does not demonstrate that the Saint Paul Police arrested him in a manner causing him to flee. *See* ECF No. 164-1, at 6 (citing *Brown v. Illinois*, 422 U.S. 590 (2004)). There is no evidence beyond Pickens' bare assertions that the manner of his arrest "was calculated to cause surprise, flight, and confusion" as found in *Brown. Id.* Instead, as Pickens

admits, a marked squad car first turned on its lights to pull him over before an unmarked car arrived. This is quite different from the scenario in *Brown,* where plainclothes officers broke into a defendant's home at night and arrested him by pointing their revolvers at him through a window and door. *See Brown*, 422 U.S. at 592-93. There was no "purposeful and flagrant" conduct here that would justify suppression of evidence.

Given that the trial and appellate courts acknowledged the strength of the Government's Fourth Amendment argument, Pickens cannot meet his burden to show a "substantial" likelihood that his counsel's choices at the suppression hearing and failure to object to evidence would have altered the outcome of his trial.  *See Strickland,* 466 U.S. at 693.  Because police had an independent basis to stop Pickens and search his car, he does not meet the "prejudice" prong of *Strickland,* and Grounds One through Three of his motion should be denied.

## V. Ground Four: Pickens does not show that he received ineffective assistance of counsel during plea negotiations

Pickens does not meet his burden to show that he would have received a shorter sentence but for his counsel's "misadvice" during plea negotiations. Criminal defendants have "no constitutional right to plea bargain," *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). Still, a defendant does have a Sixth Amendment right to counsel during the plea-bargaining process. *Lafler*

*v. Cooper,* 566 U.S. 156, 162 (2012). To show that his counsel was ineffective, Pickens must meet *Strickland's* first prong to show that he rejected a guilty plea based on advice that fell below an "objective standard of reasonableness." *Id.* at 163. *See Hill v. Lockhart,* 474 U.S. 52, 56 (1985) (finding that counsel is ineffective when the advice is not "within the range of competence demanded of attorneys in criminal cases"); *Buchheit v. Norris,* 459 F.3d 849, 852-53 (8th Cir. 2006) (same) (citing *Hill,* 474 U.S. at 56). In evaluating whether Pickens' counsel provided professionally unreasonable advice, the Court must apply a "highly deferential" standard of scrutiny to counsel's performance, making an effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland,* 466 U.S. at 689. The Court must avoid "intrusive post-trial inquiry into attorney performance" that results in a "second trial, this one into counsel's unsuccessful defense." *Id.* at 690.

To meet the prejudice prong, Pickens must show:

A substantial likelihood that (1) he would have accepted the offer to plead pursuant to the earlier proposed terms, (2) neither the prosecution nor the trial court would have prevented the offer from being accepted, and (3) the plea terms would have been less severe than under the judgment and sentence that were actually imposed. *See Lafler*, 566 U.S. at 164.

*Allen v. United States,* 854 F.3d 428, 432 (8th Cir. 2017). *See Ramirez v. United States,* 751 F.3d 604, 608 (8th Cir. 2014) (to demonstrate prejudice, defendant must show a "'reasonable probability" [that he] would have accepted the plea offer had [he] been afforded effective assistance of counsel'") (quoting *Missouri v. Frye,* 566 U.S. 134, 147). *Cf. Love v. United States,* 949 F.3d 406, 409 (8th Cir. 2020) (failing to cite *Lafler* and noting that "[t]he *Strickland* factors apply to claims arising from plea negotiations and the second prong is satisfied if accepting a plea offer would have resulted in a lesser sentence").

### A.   *Pickens does not show that his counsel's advice fell below an objective standard of reasonableness*

Pickens does not show that his attorney's alleged advice was not within the "wide range of reasonable professional assistance." *Johnson v. United States,* 278 F.3d 839, 842 (8th Cir. 2002). First, Pickens never claims that his attorney told him directly to reject the plea deal. *See* ECF No. 164-1, at 9-10. He claims only that his attorney told Pickens he could "continue to pursue the suppression issue at trial and on appeal." *Id.* Counsel also told Pickens that he would "support [Pickens'] decision." ECF No.. 164-2, at ¶ 20. Second, it is not clear that counsel's advice reflected an unsound trial strategy. By avoiding a guilty plea, Pickens preserved his opportunity to seek acquittal and continue to challenge the evidence he disputed. Furthermore, he avoided signing a waiver of his appeal rights, which would almost certainly have been a condition

for a plea agreement. He admits that his attorney informed him that appealing the evidentiary rulings would be possible. ECF No. 164-1, at 10. It would not be objectively unreasonable for Pickens' counsel to tell him that he could fight the suppression issue at trial and post-trial, while preserving the issue for appeal.

Pickens' dissatisfaction with his outcome is not an opportunity for the Court to second-guess trial counsel using information that was not available at the time. It may be clear now that "the suppression issue [was] dead" after the Court adopted the R&R, but the Court cannot assume that was true at the time Pickens made his pleading decision. ECF No. 164-2, at ¶ 20. Neither he nor his counsel could have known how the Court would rule on his post-trial motions, nor how the Court of Appeals would rule on the suppression issues. Pickens was able to go through the trial, then make his suppression arguments in two post-trial motions and on appeal.

In fact, the record suggests that the suppression issue was not clearly "dead" at the time Pickens went to trial. There was ambiguity about the ability to challenge the waiver ruling on the suppression claims. The Court of Appeals even noted in its opinion that "whether the issue [was] waived [on appeal], or whether plain-error review is available, is an unsettled question in our circuit." *United States v. Pickens*, 58 F.4th at 988. The Court of Appeals further noted

that it found nothing "that seriously affected the fairness or integrity of this prosecution." *Id.* at 988. These statements support the contention that Pickens' counsel was not deficient. Finding that counsel's fruitless advice was objectively unreasonable because of the subsequent affirmation of waiver is exactly the type of "hindsight," or "intrusive review" that *Strickland* restrains.

### B. *Pickens does not show that his counsel's advice during plea negotiations sufficiently prejudiced him*

Even if Pickens' counsel did provide deficient advice, Pickens does not show a "substantial likelihood that he would have accepted the offer to plead guilty" prior to trial. *Allen,* 854 F.3d at 432. His motion presents no "'credible, non-conclusory evidence that he would have pled guilty had he been properly advised.'" *Sanders v. United States,* 341 F.3d 720, 722 (8th Cir. 2003) (*quoting Engelen v. United States,* 68 F.3d 238, 241 (8th Cir. 1995)).

To the contrary, the record shows that Pickens was not prepared to plead guilty, but rather that he wished to proceed to trial to have the chance to be acquitted and appeal unfavorable pretrial motions. Throughout the proceedings, Pickens refused to admit guilt and continued to seek a new trial while arguing to suppress the evidence against him. Even in this motion, he does not ask for the opportunity to plead guilty under the original agreement, but rather asks the court to vacate his judgment and "enter a judgment of acquittal." ECF No. 164, at 12. Pickens' repeated reluctance to admit guilt and

efforts to suppress evidence against him refute his claims that he would have accepted the government's plea offer. *See Allen,* 854 F.3d at 432-34 (8th Cir. 2017) (holding that habeas petitioner did not show prejudice where it was "clear that [his] decision was motivated by his belief that the plea offer was not favorable enough and his hope that he would succeed on the suppression motion"); *McNeil v. United States,* 63 Fed.Appx. 963, 965 (8th Cir. 2003) (per curiam) (rejecting appeal of a § 2255 petition denial where "the record contain[ed] no evidence that [the defendant] would have acknowledged his guilt before trial"). Pickens did not accept responsibility when given the opportunity in the Presentence Interview. At sentencing, Pickens did not admit guilt, but told the court that he did not feel he received a fair trial. ECF No. 154, at 18:25-19:2. Pickens sought acquittal and a new trial after his conviction. Indeed, Pickens' appeal focused on his claim that evidence should have been suppressed as fruit of the poisonous tree due to Fourth Amendment violations from the tracking warrants. Pickens' appeal brief made no mention of deficient advice during pleading, in spite of raising other ineffective assistance of counsel claims.

Pickens' motion is further undermined by the fact that he never told the Court or his new counsel about his alleged decision to reject the plea based on his counsel advice. His assertions after the fact that "he would never have

taken the case to trial had he known that he had waived suppression of the illegally obtained evidence" are insufficient by themselves to show prejudice from his counsel's advice. ECF No. 164-2, ¶¶ 19-21. Without corroborating evidence from the record, his claims should not be the sole basis for § 2255 relief. *United States v. Frederick,* 526 Fed.Appx. 91, 2013 WL 1846474, at *1 (2d Cir. May 3, 2013) (finding that, to prove prejudice from counsel's advice during plea negotiations, a defendant must offer some additional "objective evidence" besides his own statements) (*quoting United States v. Gordon,* 156F.3d 376, 381 (2d Cir. 1998)); *Paters v. United States,* 159 F.3d 1043, 1047 (7th Cir. 1998) (finding that the defendant's post-conviction statements alone were not enough to show prejudice); *Diaz v. United States,* 930 F.2d 832, 834-35 (11th Cir. 1991) (denying § 2255 petition where the defendant "cite[d] no evidence to indicate that prior to his conviction he expressed any desire to plead guilty).

Pickens had numerous opportunities during trial to reopen plea negotiations or instruct his attorney to object to evidence obtained as a result of the tracking warrants, yet he did neither. It was clear from the government's opening statement that the evidence from Pickens' car would be the cornerstone of the government's case. *See* ECF No. 159, at 214-218. The government told the jury, while Pickens was present, that they would "see the

actual cocaine, the six bricks of cocaine found in his car." *Id.* at 217:3-6. Pickens also heard the government announce its intention to bring a forensic expert who would testify that this was a "distribution amount of cocaine." ECF No. 159 at 218:1-3. Throughout the trial, several of the government's witnesses testified to the cocaine found in the car, including the officers who stopped and searched Pickens and the forensic experts who tested the cocaine. *See, e.g.* ECF No. 121, at 303-40. In his motion, Pickens does not claim that he ever took the opportunity during trial to instruct his attorney to object to this evidence or inform the government that he wished to plead.

It is implausible that Pickens was prepared to plead guilty but-for his counsel's advice, yet he never raised that issue during trial or appeal. Instead, the record shows that he maintained his position that the evidence against him was illegal and that he was not prepared to admit guilt. Because Pickens does not demonstrate a reasonable probability that he would have accepted the plea deal but for his counsel's advice, he cannot show prejudice. Ground Four should be denied.

## VI.   In any event, the Court should not enter a judgment of acquittal or grant an evidentiary hearing

If the Court does find that Pickens' counsel was ineffective, a judgment of acquittal would not be the appropriate remedy. Remedies for Sixth Amendment violations should be "tailored to the injury suffered from the

constitutional violation and should not unnecessarily infringe on competing interests." *United States v. Morrison,* 449 U.S. 361, 364 (1981). The remedy should not "grant a windfall to the defendant or needlessly squander the considerable resources the State properly invested in the criminal prosecution. *Lafler,* 566 U.S. at 170. For ineffective assistance during plea negotiations, a remedy should address the "specific injury" to the defendant, which is generally the loss of an opportunity to receive a "lesser sentence." *Lafler v. Cooper,* 566 U.S. at 171. Given that police had an independent basis to stop and search Pickens, rendering the tracking warrants immaterial to his conviction, the appropriate remedy for Pickens would be to grant an evidentiary hearing to "determine whether the defendant has shown a reasonable probability that but for counsel's errors he would have accepted the plea." *Id.* It would not be acquittal.

However, Pickens is not entitled to an evidentiary hearing on any of his grounds. A movant is "entitled to an evidentiary hearing" unless the record conclusively establishes that he may not obtain any relief. *Franco v. United States*, 762 F.3d 761, 763 (8th Cir. 2014); 28 U.S.C. § 2255(b). A hearing is not required when claims are "contradicted by the record, inherently incredible, merely conclusions, or would not entitle [the defendant] to relief." *Roundtree v. United States,* 751 F.3d 923, 926 (8th Cir. 2014). Here, each of Pickens' allegations is facially inadequate, contradicted by the record, or inherently

incredible. Grounds One through Three are inadequate because the government had an independent basis to stop and search Pickens. Ground Four is inadequate because the record does not support Pickens' self-serving claim that he pleaded guilty as a result of deficient advice. *See Garcia v. United States,* 679 F.3d 1013, 1014-15 (8th Cir. 2012) (affirming denial of evidentiary hearing for ineffective assistance during plea negotiations where defendant consistently maintained his innocence and expressed a desire to go to trial). The Court should decline to hold a hearing and deny Pickens' motion.

## VII.  This Court should not issue a certificate of appealability

A certificate of appealability is issued in § 2255 proceedings only if the applicant has made a substantial showing of the denial of a constitutional right and has indicated which specific issue or issues satisfy the showing required. *See* 28 U.S.C. § 2253(c)(2) & (3). Further, "the petitioner 'must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [differently]; or that the questions are adequate to deserve encouragement to proceed further.'" *Randolf v. Kemna*, 276 F.3d 401, 403 n. 1 (8th Cir. 2002) (internal citations omitted). Pickens does not meet that standard here, so the Court should decline to issue a certificate of appealability in this case.

## **CONCLUSION**

For the foregoing reasons, Pickens' § 2255 motion should be denied.

DATED: July 10, 2023                    Respectfully submitted,

ANDREW M. LUGER
United States Attorney

_s/ William C. Mattessich_

BY: William C. Mattessich
Assistant U.S. Attorney
Attorney Reg. No. 0400513
william.mattessich@usdoj.gov